Nos. 24-1406 & 24-1513

# United States Court of Appeals for the Eighth Circuit

HOME DEPOT USA, INC.,

*Petitioner/Cross-Respondent*,

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner.*

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

**THE AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS' *AMICUS CURIAE* BRIEF IN SUPPORT OF RESPONDENT/CROSS-PETITIONER NATIONAL LABOR RELATIONS BOARD**

Matthew Ginsburg
Harold C. Becker
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5397

*Counsel for Amicus Curiae*

# STATEMENT OF COMPLIANCE WITH RULE 29

Pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure, *amicus* states that all current parties have consented to the filing of this brief in support of Respondent/Cross-Petitioner National Labor Relations Board. In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus* states that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except *amicus*, its counsel and/or its members contributed money to fund the preparation or submission of this brief.

Appellate Case: 24-1513     Page: 2     Date Filed: 07/18/2024 Entry ID: 5415018

# TABLE OF CONTENTS

Page

STATEMENT OF COMPLIANCE WITH RULE 29 ................................i

TABLE OF AUTHORITIES.................................................. iii

INTEREST OF AMICUS CURIAE........................................... 1

INTRODUCTION & SUMMARY OF ARGUMENT................................1

ARGUMENT ...............................................................3

  I.  The Board's Order Does Not Compel Home Depot to Speak ..........3

  II.  The Board's Order Regulates Conduct, Not Speech.......................7

  III. The Order Does Not Interfere with Any Message Conveyed by the Expressive Portion of Home Depot's Aprons or Dress Code ...11

  IV. *Wooley v. Maynard* Does Not Set Forth a Contrary Rule .............15

  V.  The Board's Order Survives Intermediate Scrutiny ....................18

    A. The Board's Regulation of Home Depot's Speech is Incidental to its Regulation of Conduct ........................................19

    B. Home Depot's Speech is Commercial............................20

    C. The Board's Order Survives Intermediate Scrutiny Under Either *O'Brien* or *Central Hudson*...............................22

      i.  *O'Brien* Test for Regulation of Speech Incident to Conduct ...22

      ii.  Central Hudson Test for Regulation of Commercial Speech ..25

  VI. Accepting Home Depot's First Amendment Argument Would Undermine Decades of Established Law .....................................27

CONCLUSION ...........................................................34

CERTIFICATE OF COMPLIANCE.........................................35

CERTIFICATE OF SERVICE..............................................36

Appellate Case: 24-1513    Page: 3    Date Filed: 07/18/2024 Entry ID: 5415018

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Response W.,*
    370 NLRB No. 58 (2020) ........................................................... 29

*Amalgamated Transit Union Loc. 85 v. Port Auth.,*
    39 F.4th 95 (3d Cir. 2022) ........................................................... 7

*Arkansas Times LP v. Waldrip,*
    37 F.4th 1386 (8th Cir. 2022) (en banc) ..................................... 10, 19

*Barnes v. Glen Theatre, Inc.,*
    501 U.S. 560 (1991) ................................................................. 24

*Bd. of Trs. v. Fox,*
    492 U.S. 469 (1989) ................................................................. 27

*Bell-Atl.-Pa., Inc.,*
    339 NLRB 1084 (2003) ......................................................... 31, 32

*Boch Imps., Inc.,*
    362 NLRB 706 (2015) .............................................................. 29

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983) ................................................................... 21

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
    447 U.S. 557 (1980) ........................................................... *passim*

*Cintas Corp. v. NLRB,*
    589 F.3d 905 (8th Cir. 2009) ................................................. 29, 30

*Eastex, Inc. v. NLRB,*
    437 U.S. 556 (1978) ................................................................. 23

*Fabri-Tek, Inc. v. NLRB,*
    352 F.2d 577 (8th Cir. 1965) ................................................. 19, 28

Appellate Case: 24-1513    Page: 4    Date Filed: 07/18/2024    Entry ID: 5415018

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006)................................................................. 4, 5, 6, 7

*Hurley v. Irish Am. Gay, Lesbian & Bisexual Grp. of Boston,*
  515 U.S. 557 (1995)..................................................................... 13, 14

*In-N-Out Burger, Inc.,*
  365 NLRB No. 39 (2017).................................................................. 29

*Jacobs v. Clark Cnty. Sch. Dist.,*
  526 F.3d 419 (9th Cir. 2008)............................................................ 14

*Janus v. AFSCME, Council 31,*
  585 U.S. 878 (2018)...................................................................... 4, 5, 7

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022)........................................................................ 6

*Lichtenstein v. Hargett,*
  83 F.4th 575 (6th Cir. 2023) ........................................................... 22

*Livestock Mktg. Ass'n v. USDA,*
  335 F.3d 711 (8th Cir. 2003)........................................................... 25

*Masterpiece Cakeshop v. Colorado C.R. Comm'n,*
  584 U.S. 617 (2018)........................................................................ 24

*Mia. Herald Publ'g Co. v. Tornillo,*
  418 U.S. 241 (1974)........................................................................ 13

*Moody v. NetChoice, LLC,*
  144 S. Ct. 2383 (2024).................................................................. 8, 15

*NLRB v. Intertherm, Inc.,*
  596 F.2d 267 (8th Cir. 1979)........................................................... 29

*NLRB v. Starbucks Corp.,*
  679 F.3d 70 (2d Cir. 2012) ............................................................. 32

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978)........................................................................ 21

Appellate Case: 24-1513    Page: 5    Date Filed: 07/18/2024 Entry ID: 5415018

*Owsley v. Luebbers*,
    281 F.3d 687 (8th Cir. 2002)............................................................ 30

*Passions Video, Inc. v. Nixon*,
    458 F.3d 837 (8th Cir. 2006)............................................................ 26

*Pathmark Stores, Inc.*,
    342 NLRB 378 (2004) .................................................................... 31

*PruneYard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980)................................................................ 14, 16, 17

*Republic Aviation Corp. v. NLRB*,
    324 U.S. 793 (1945)................................................................. *passim*

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
    547 U.S. 47 (2006)................................................................... *passim*

*S. New England Tel. Co. v. NLRB*,
    793 F.3d 93 (D.C. Cir. 2015) ......................................................... 31

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987)...................................................................... 20

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)...................................................................... 19

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019)........................................................... 20

*Texas v. Johnson*,
    491 U.S. 397 (1989)...................................................................... 22

*United Parcel Serv.*,
    312 NLRB 596 (1993) .................................................................. 33

*United States v. Albertini*,
    472 U.S. 675 (1985)...................................................................... 22

*United States v. O'Brien*,
    391 U.S. 367 (1968)................................................................. *passim*

Appellate Case: 24-1513    Page: 6    Date Filed: 07/18/2024 Entry ID: 5415018

*W San Diego,*
348 NLRB 372 (2006) .................................................................. 31

*Wal-Mart Stores, Inc. v. NLRB,*
400 F.3d 1093 (8th Cir. 2005) .................................................... 28

*Wooley v. Maynard,*
430 U.S. 705 (1977) ......................................... 15, 16, 17, 18

*Zauderer v. Off. of Disciplinary Couns.,*
471 U.S. 626 (1985) .................................................................. 21

**Statutes**

15 U.S.C. § 1127 ........................................................................ 12

Appellate Case: 24-1513    Page: 7    Date Filed: 07/18/2024 Entry ID: 5415018

# INTEREST OF AMICUS CURIAE

The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of 60 national and international labor organizations with a total membership of over 12.5 million working men and women. Since before 1945, the AFL-CIO's members have relied on an unbroken line of precedent under the National Labor Relations Act ("NLRA") establishing their right to wear buttons and other insignia related to workplace concerns, qualified by a well-developed doctrine permitting employers to demonstrate "special circumstances" in order to limit this right. This case raises a novel—but ultimately unsupported—constitutional argument that threatens this established framework for AFL-CIO members working in customer-facing environments. The AFL-CIO has a strong interest in ensuring that an appropriate First Amendment analysis is applied in this case to guarantee this right for union and non-union workers alike.

# INTRODUCTION & SUMMARY OF ARGUMENT

The National Labor Relations Board ("Board") found that employee Cáro Linda Bo ("Bo") engaged in concerted activity protected under the NLRA when they refused to remove handwritten markings

1

reading "BLM" (shorthand for "Black Lives Matter") from Home Depot's company uniform. Consequently, the Board found that Home Depot had violated the NLRA by applying its dress code to prohibit the display, directing Bo to remove the BLM markings, and constructively discharging Bo by conditioning any further employment on their removal; and issued a standard remedial order that Home Depot "cease and desist" from such conduct.

We write to emphasize that, in addition to being statutorily authorized by the NLRA, *see* Board Br. 14-46, the Board's order is constitutional. The Board's order does not compel Home Depot to speak nor restrain it from speaking on any issue; instead, it regulates Home Depot's *conduct*, by narrowly limiting when it can discipline employees based on the *employee's* speech. Far afield from the core examples of expressive activity that Home Depot invokes in its briefing, the enforcement of a dress code is best analyzed as non-expressive conduct that does not implicate the First Amendment at all.

But even if Home Depot were deemed to be "speaking" in some manner by enforcing its dress code, the Board's order is nevertheless constitutional when subject to the proper tier of First Amendment

Appellate Case: 24-1513     Page: 9     Date Filed: 07/18/2024 Entry ID: 5415018

scrutiny. Because any effect on Home Depot's speech rights is plainly incidental to the regulation of its conduct and because its speech is commercial in nature, intermediate scrutiny applies. The order must therefore be upheld because the government interest in enforcing the core right protected by the NLRA is substantial and the interference with Home Depot's speech is minimal, if any, and narrowly tailored to redress the employer's violation of the Act.

Finally, that courts have not previously addressed Home Depot's constitutional claims—which are inconsistent with decades of precedent—is unsurprising. Longstanding Board doctrine allows employers to show "special circumstances" to justify enforcement of a dress code to bar protected insignia. This test more rigorously protects employer speech interests than the Constitution requires, thereby avoiding any First Amendment issue.

## ARGUMENT

### I. The Board's Order Does Not Compel Home Depot to Speak

Home Depot argues that, because Bo handwrote "BLM" on a company-issued apron, the letters are necessarily the employer's speech. Home Depot ("HD") Br. 45. But no reasonable observer would

3

understand Bo's handwritten BLM letters to represent Home Depot's views in light of its employees' extensive personalization of uniforms any more than they would conclude that Home Depot was celebrating its own family, pets, or birthday, supporting one sports team over another, or "speaking its views" through any other employee personalization. *See* JA834 (Board Decision: "There is no risk that the public will believe that [Bo]'s small, hand-drawn BLM marking was part of the Respondent's trademarked apron or that the Respondent was the source of the marking."). Home Depot concedes as much when it describes its employees' "*personalized*" messages. HD Br. 6 (emphasis added). No reasonable observer would conclude that the Board's order compels Home Depot to express its *own* support of the BLM Movement.

Perhaps because the assertion that the Board's order somehow compels the company to speak is belied by the factual record, Home Depot takes a different tack. Relying on an out-of-context quote from the Supreme Court's discussion of *Garcetti v. Ceballos*, 547 U.S. 410 (2006), in *Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018), Home Depot suggests that when an "employee engages in speech that is part of the employee's job duties, the employee's words are really the words

4

of the employer." HD Br. 40 (citing *Janus*, 585 U.S. at 910). It then affirms that because Bo was interacting with customers while wearing the apron bearing the BLM insignia, the expression was Home Depot's speech.

That is not the law. Only employee speech that is "*part of* the employee's job duties"—"duties an employee *actually is expected to perform*"—is considered employer speech for purposes of assessing a First Amendment claim asserted by a public employee. *Janus*, 585 U.S. at 910 (emphasis added); *Garcetti*, 547 U.S. at 424–25 (emphasis added). In this case, Bo's duties may have included assisting customers with selecting products, but they did not include personalizing the apron, which Bo was free to do or not do. Home Depot did not *require* that employees personalize their aprons, instead its policy clearly explains that employees have the *option* to do so. *See* JA595–600; 791–92.

Unlike speech that is "*part of* the employee's job duties," speech that merely occurs while the employee is performing job duties is not automatically considered the employer's speech under *Garcetti*. Indeed,

Appellate Case: 24-1513     Page: 12     Date Filed: 07/18/2024 Entry ID: 5415018

*Garcetti* rejected the notion that "all [employee] speech within the office is automatically exposed to restriction." 547 U.S. at 421.

This point was underscored in the Court's recent decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), which held that a high school football coach engaged in protected speech by conducting prayer after games, at a time when he was still working, *i.e.*, on the field of play, because he did not offer the prayers "while acting within the scope of his duties as a coach." *Id.* at 530. The Court concluded that the coach engaged in "private speech, not [his government employer's] speech" because his prayers were not "within the scope" of his duties, which included "instructing players, discussing strategy, [and] encouraging better on-field performance." *Id.* at 529–30 (citations omitted). The Court expressly cautioned against "treating everything teachers and coaches say in the workplace as [employer] speech," as "[o]n this understanding, a school could fire a Muslim teacher for wearing a headscarf in the classroom" because she was engaging in a speech act while carrying out her duties. *Id.* at 530–31.

This is precisely the error that Home Depot commits here. Just as a teacher does not speak on behalf of her employer by wearing a cross

6

while teaching, Bo was not speaking on behalf of Home Depot when they handwrote BLM on the apron and wore it while performing their duties.

For these reasons, courts have rejected the argument Home Depot makes here. In *Amalgamated Transit Union Local 85 v. Port Authority*, 39 F.4th 95 (3d Cir. 2022), for example, the Third Circuit held that uniformed transit employees had a First Amendment right to wear face masks bearing messages such as Black Lives Matter because the speech was not the employer's: the "Port Authority did not hire these employees to express their views on political and social issues." *Id.* at 103.

Rather than supporting Home Depot's position, *Janus* and *Garcetti* make clear that the handwritten BLM was *not* Home Depot's speech.

## II. The Board's Order Regulates Conduct, Not Speech

Because Bo and not Home Depot was speaking when Bo wrote the letters BLM on their apron, what is at issue is not speech but action—the action Home Depot took to enforce its dress code. In such cases, the First Amendment is implicated "only if the regulated party is engaged

Appellate Case: 24-1513    Page: 14    Date Filed: 07/18/2024 Entry ID: 5415018

in its own expressive activity, which the mandated [accommodation] would alter or disrupt." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2400 (2024) (concluding social media companies are engaged in expression). Here, Home Depot's dress code is not itself expressive, and its contrary argument is foreclosed by *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ("*FAIR*").

In *FAIR,* a statute required law schools to allow the military to participate in on-campus recruiting available to other employers. Like Home Depot's allowance of employee speech on certain issues but not others, law schools invited some speakers onto their property to speak to students, but excluded the military from doing the same. The Supreme Court held that the statute "regulates conduct not speech;" "it affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id*. at 60. And the same is true here. The Board's order is simply that Home Depot cease and desist from "[p]rohibiting its employees from engaging in protected concerted activities, including by displaying BLM or Black Lives Matter markings on their aprons." JA838.

8

Like Home Depot here, the law schools in *FAIR* argued that if they permitted the military on campus, it would communicate a message about their own views, *i.e.*, "that they see nothing wrong with the military's policies [concerning LGBTQ employees], when they do." 547 U.S. at 65. Home Depot likewise seeks to avoid being seen as taking sides on a contentious political issue. But the Supreme Court rejected that argument in *FAIR*. It held that the conduct of excluding the military recruiters, like the conduct of excluding the BLM lettering here, was not "inherently expressive." *Id.* at 66. Though the law schools attributed expressive meaning to their conduct, whether it *was* expressive hinged on an inquiry into how it would be perceived by third parties. Applying that test, the Court found that reasonable observers would not perceive that the law schools were expressing a message because they had "no way of knowing whether the law school is expressing its disapproval of the military, all the law school's interview rooms are full, or the military recruiters decided for reasons of their own that they would rather interview someplace else." *Id.*

Home Depot asserts that it wished to convey a message that it was not taking any position on political issues generally or on the BLM

Appellate Case: 24-1513    Page: 16    Date Filed: 07/18/2024 Entry ID: 5415018

movement in particular in order to maintain a welcoming environment for its customers. *See, e.g.,* JA372. Home Depot maintains a dress code that states that its apron is "not an appropriate place to promote or display religious beliefs, causes or political messages unrelated to workplace matters." JA791. The application of this policy in stores, is, according to Home Depot, the "speech" at issue in the case, which expresses a message that "Home Depot has chosen to preserve the integrity of its storefronts *as storefronts*—not arenas for political discourse." HD Br. 21.

But, as *FAIR* makes clear, Home Depot's characterization of what it *intended* to convey by enforcing its dress code policy is irrelevant. The test for whether conduct is expressive for First Amendment purposes isn't "whether someone *intended* to express an idea, but whether a neutral observer would *understand* that they're expressing an idea." *Arkansas Times LP v. Waldrip*, 37 F.4th 1386, 1392 (8th Cir. 2022) (en banc). There is no likelihood that a reasonable observer entering Home Depot's store would perceive the *absence* of BLM insignia or any other political messages, much less understand that Home Depot prevented employees from displaying those messages in order to convey a message

10

of neutrality on political issues. As in *FAIR*, a reasonable observer seeing employees with rainbow flags and cartoon characters but not BLM initials would have no way of knowing whether Home Depot prevented employees from wearing such insignia or whether employees decided not to wear them for reasons of their own.

Accordingly, Home Depot failed to demonstrate that enforcement of the uniform policy constitutes expressive conduct. Because the company itself is not engaged in expression, the requirement that it cease interfering with Bo's rights under the NLRA by preventing employees from engaging in concerted activity, including the display of BLM insignia, does not interfere with Home Depot's First Amendment rights.

## III. The Order Does Not Interfere with Any Message Conveyed by the Expressive Portion of Home Depot's Aprons or Dress Code

Even if *some portion* of Home Depot's uniform—such as the orange apron, the company logo, the "Values Wheel," or a combination thereof—constitutes Home Depot's speech, the Board's order did not interfere with any such speech.

11

As Home Depot notes, the orange apron and Home Depot logo are both registered trademarks. JA370. The purpose of a trademark is to identify the source of goods. *See* 15 U.S.C. § 1127 (owner uses trademark "to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods"). Consistent with this purpose, the record shows that the expressive message that would be gleaned from Home Depot's uniforms is one of identification – *i.e.*, indicating to customers that they are in a Home Depot and readily identifying employees. *See, e.g.,* JA343 ("It's . . . like a flag in the store to let a customer know that this particular associate works for Home Depot."). *This* limited message *could* be perceived and understood by a reasonable observer and is therefore entitled to some First Amendment protection.

But there is no evidence that Bo's handwritten inscription of "BLM" on their uniform affected Home Depot's ability to identify itself or its employees to customers. Bo did not obscure or deface the company logo or the "Values Wheel." While Bo did write the letters on the apron, doing so was less intrusive than the other employee personalization

permitted by the company[1] and could not possibly have prevented customers from identifying Bo as a Home Depot employee.

Home Depot attempts to resist this conclusion by relying on *Hurley v. Irish American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 570 (1995), which held that a speaker—in that case the organizer of a parade—"does not forfeit constitutional protection simply by combining multifarious voices" to create a speech product—here *all* the employees' messages. But *Hurley* does not support Home Depot's argument because, unlike a work uniform, it involves a form of expression that lies at the core of First Amendment protection—a public assembly. *See FAIR*, 547 U.S. at 63 ("The expressive nature of a parade was central to our holding in *Hurley*."). A parade organizer selects participants in order to "mak[e] some sort of collective point, not just to each other but to bystanders along the way." *Hurley*, 515 U.S. at 568. The curated compilation of "multifarious voices" in a parade (or a newspaper, *see Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974)), is expressive because these are mediums that are traditionally

---

[1] *Compare* JA422 (Bo's apron) *with* JA560 (extensive personalization entirely obscuring "values wheel" and partially obscuring company logo).

13

used to convey ideas, and the voices are affirmatively selected for that purpose.[2]

The presence of "multifarious voices" in the form of employees' personalization of their aprons in this case does not lead to the same conclusion. As a general matter, a uniform is not, itself, inherently expressive. *See, e.g., Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 438 (9th Cir. 2008) ("Wearing a uniform does not involve written or verbal expression of any kind"). Whereas an observer would reasonably believe that, "like a composer, [a parade sponsor] selects the expressive units of the parade" to express a desired message, *Hurley*, 515 U.S. at 574, nobody would believe the same about the skulls, pumpkins, and family photographs with which Home Depot staff personalized their aprons. Unlike an entity that is "in the business . . . of combining 'multifarious voices' to create a distinctive expressive offering," Home Depot's tolerance for employee expression does not produce a "compilation of

---

[2] Moreover, it is not clear that this theory, based on *Hurley*, applies at all to commercial speech because *Hurley* relied heavily on the fact that the parade was "noncommercial speech" and distinguished *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980), on the grounds that "the proprietors [in that case] were running 'a business establishment that is open to the public.'" *Hurley*, 515 U.S. at 580 (quoting *PruneYard*, 447 U.S. at 87).

Appellate Case: 24-1513    Page: 21    Date Filed: 07/18/2024 Entry ID: 5415018

speech" that is "curated" by the employer. *Moody*, 144 S. Ct. at 2400, 2405. The employees' expression is theirs and theirs alone.

Therefore, even if it was, to some degree, "speaking" through its aprons, Home Depot failed to demonstrate that its "own message was affected by the speech it was forced to accommodate." *FAIR*, 547 U.S. at 63.

## IV. *Wooley v. Maynard* Does Not Set Forth a Contrary Rule

Home Depot alternatively suggests that a different analysis is warranted under *Wooley v. Maynard*, 430 U.S. 705 (1977), where the Court held that the First Amendment prohibited New Hampshire from requiring motorists to display a license plate bearing the state motto "Live Free or Die." Relying on *Wooley*'s statement that it was unconstitutional for the statute to require individuals to "use their private property as a 'mobile billboard' for the State's ideological message," 430 U.S. at 715, Home Depot suggests that, so long as its property is at issue, it may not be forced to be a conduit for "someone else's 'ideological message,' regardless of whether [Home Depot itself is] speaking." HD Br. 49. Home Depot asserts that because it owns its

15

aprons, it has a categorical right to exclude any message from appearing on them.

The Supreme Court has expressly rejected this broad reading of *Wooley*. In *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 86 (1980), an owner of a commercial shopping center argued that *Wooley* forbade a state from "forc[ing] an individual to display any message at all," or at the least from doing so "on his private property in a manner and for the express purpose that it be observed and read by the public." The Court rejected the categorical proposition that "a private property owner has a First Amendment right not to be forced by the State to use his property as a forum for the speech of others." *Id.* at 85. Instead, the Court upheld a state requirement allowing for petitioning activity in commercial malls based on factors also present here, including: (1) the private property in question was a "business establishment that is open to the public"; (2) "the views expressed . . . will not likely be identified with those of the owner"; (3) the owner could "expressly disavow any connection with the message;" and (4) "no specific message is dictated by the State to be displayed on [the] property." *Id.* at 87.

16

In *FAIR*, the Supreme Court again rejected the broad reading of *Wooley* that Home Depot presses here. As part of their statutorily-required accommodation of military recruiters, law schools were required to "send e-mails or post notices on bulletin boards" on their property advertising these recruiters' services. 547 U.S. at 61. Although these messages were speech and were clearly undesired by the law schools, the Court found that "this sort of recruiting assistance . . . is a far cry from the compelled speech in . . . *Wooley*" insofar as there was "nothing . . . approaching a Government-mandated pledge or motto that the school must endorse." *Id.* at 62. Indeed, the Court continued, the law schools' contrary argument "trivialize[d] the freedom protected in . . . *Wooley*." *Id.*

If a statute could compel law schools to accommodate the military's speech on bulletin boards expressly designed to communicate information, then *Wooley* poses no bar to accommodating speech on a company uniform, whose expressive function is far more limited. Merely labeling uniforms "mobile billboards" does not entitle Home Depot to greater First Amendment protection than the law schools vis-a-vis their stationary bulletin boards. Instead, under *PruneYard* and *FAIR*,

17

*Wooley*'s holding is limited to forced endorsement of a "Government-mandated pledge or motto" and does not apply to a requirement that a retail establishment accommodate third-party speakers, which is the issue presented here.

## V.    The Board's Order Survives Intermediate Scrutiny

Home Depot has failed to demonstrate that the Board order infringes upon its First Amendment rights in any way. But even if Home Depot's speech interests were implicated, the Board's order passes constitutional muster.

For two independent reasons, the challenged restrictions are subject to intermediate—not strict—scrutiny. First, because any limitations on Home Depot's speech are purely incidental to the Board's regulation of conduct, intermediate scrutiny applies under *United States v. O'Brien*, 391 U.S. 367 (1968). Second, even if the Board's order were deemed to directly regulate Home Depot's speech, such speech is plainly commercial, and entitled to limited protection under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980) ("*Central Hudson*").

18

### A.  The Board's Regulation of Home Depot's Speech is Incidental to its Regulation of Conduct

"[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). When analyzing a government regulation primarily targeted at conduct, a "sufficiently important governmental interest in regulating the nonspeech [conduct] can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376.

We have demonstrated that the Board's order regulates Home Depot's conduct, not its speech. If the order imposes any speech-related burdens on Home Depot, this is incidental to the Board's manifest purpose—preventing an employer from disciplining employees in violation of the "conclusively established" principle that employees "have the right to wear [NLRA-protected] insignia during working time." *Fabri-Tek, Inc. v. NLRB,* 352 F.2d 577, 584 (8th Cir. 1965).

Where a government regulation directly restrains only the "noncommunicative aspect of [a party's] conduct," any "'speech' aspect . . . is incidental to the regulation of conduct." *Arkansas Times*, 37 F.4th at 1394. And, as this Court has emphasized, disciplining workers (or

19

refraining from disciplining workers, as the Board's order requires) is not speech. *See Telescope Media Grp. v. Lucero*, 936 F.3d 740, 757 (8th Cir. 2019) (strict scrutiny would not apply to "[a]n employment-discrimination law [that] . . . 'require[s] an employer to take down a sign reading 'White Applicants Only'" because the law "target[s] the *activities* of hiring employees" which does not "typically constitute[] speech").

### B. <u>Home Depot's Speech is Commercial</u>

Moreover, if the Board's order affects *any* speech, it is commercial speech "for the purpose of trade [or] to induce the sale of . . . goods or services." *S.F. Arts & Athletics, Inc.* v. *U.S. Olympic Comm.*, 483 U.S. 522, 535 (1987). Indeed, Home Depot describes it in exactly these terms. *See* HD Br. 50 ("Home Depot's iconic orange apron is 'a billboard to advertise for Home Depot'"). Any message conveyed by Home Depot is, at most, "expression related solely to the economic interests of the speaker and its audience," *i.e.*, commercial speech. *Central Hudson*, 447 U.S. at 561.

Nor can the presence of BLM markings render Home Depot's aprons noncommercial. The Supreme Court has made clear that

Appellate Case: 24-1513     Page: 27     Date Filed: 07/18/2024 Entry ID: 5415018

commercial speech can "contain discussions of important public issues," and that "advertising which links a product to a current public debate is *not* thereby entitled to the constitutional protection afforded noncommercial speech." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 67–68 (1983) (emphasis added, cleaned up).

Yet, tellingly, not a single case cited by Home Depot is a commercial speech case. That is important because the Supreme Court has made clear that "commercial speech [enjoys only] a limited measure of protection" and is subject to "modes of regulation that might be impermissible in the realm of noncommercial expression." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). The Court has emphasized that "the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985). The Board's order here in no way interferes with Home Depot's ability to communicate about itself or its products to consumers and thus does not in any way threaten the values the commercial speech doctrine protects.

Appellate Case: 24-1513     Page: 28     Date Filed: 07/18/2024 Entry ID: 5415018

## C. **The Board's Order Survives Intermediate Scrutiny Under Either *O'Brien* or *Central Hudson***

Although both *O'Brien* and *Central Hudson* call for the application of intermediate scrutiny, the factors courts consider differ slightly, and we consider them separately.

### i. ***O'Brien* Test for Regulation of Speech Incident to Conduct**

Under *O'Brien*, a regulation must be upheld if (1) "it is within the constitutional power of the Government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) the "incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377. Under this "relatively lenient standard," *Texas v. Johnson*, 491 U.S. 397, 407 (1989), it is sufficient to prove that a regulation "promotes a substantial government interest that would [otherwise] be achieved less effectively," *United States v. Albertini*, 472 U.S. 675, 689 (1985). *See also Lichtenstein v. Hargett*, 83 F.4th 575, 596 (6th Cir. 2023) (test "falls much closer to the deferential rational-basis test than the demanding strict-scrutiny test").

22

There can be no doubt that Congress has the power to regulate employer unfair labor practices and to delegate such enforcement to the Board. The Board's order furthers an "important or substantial interest"—the protection of the central right created by federal labor law. Since 1945, the Supreme Court has recognized that this right encompasses employees' right to place "insignia" on their work clothing to show support for a union or other cause related to working conditions. *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793 (1945). That right is not limited to insignia concerning forming a union but, as here, extends to a broader set of messages through which employees seek to better their lot as workers. *See generally Eastex, Inc. v. NLRB*, 437 U.S. 556 (1978).

The governmental interest is also plainly "unrelated to the suppression of [Home Depot's] free expression." The Board's order is narrowly focused on vindicating Bo's rights under the NLRA. It does not apply to Home Depot *because* of any expression by Home Depot, but only because it disciplined a worker who was engaged in protected concerted activity. Where "the government would have punished the conduct regardless of its [allegedly] expressive component," the *O'Brien*

23

test applies. *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 664 (2018) (Thomas, J., concurring); *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 571 (1991) (upholding general nudity ban as applied to expressive dancing because any prosecution would be based solely on the "noncommunicative" element of the conduct).

Finally, the governmental interest in protecting employees' right to engage in concerted activities would be less effectively served absent the order, and the order does not impinge on Home Depot's First Amendment rights more than is essential. The Board's remedial order does no more than require Home Depot to permit its employee to exercise federally protected rights. It does not bar Home Depot from requiring that employees wear its orange apron, from placing its logo and "value wheel" on the apron, or from preventing employees from defacing or obscuring the logo or wheel. Nor does it impede Home Depot from preventing its employees from placing any message on their apron that is unrelated to their interests as employees or is not part of concerted action. And, decisively, because it does not stop Home Depot itself from speaking in any way and through any medium, it does not suppress any information. The order vindicates the employee's rights

24

while interfering as little as possible with Home Depot's expressive

freedom. It therefore must be sustained under the *O'Brien* test.

### ii. *Central Hudson Test for Regulation of Commercial Speech*

Analogous to *O'Brien*, *Central Hudson* asks first whether the

government has "assert[ed] a substantial interest to be achieved by

restrictions on commercial speech." 447 U.S. at 564.[3] If that is the case,

"the regulatory technique must be in proportion to that interest," in

other words, "[t]he limitation on expression must be designed carefully

to achieve the State's goal." *Id.* Compliance with this second

requirement may be measured by two criteria:

> First, the restriction must directly advance the state interest
> involved; the regulation may not be sustained if it provides
> only ineffective or remote support for the government's
> purpose. Second, if the governmental interest could be served
> as well by a more limited restriction on commercial speech,
> the excessive restrictions cannot survive.

---

[3] This Court has held that the *Central Hudson* analysis applies to compelled speech claims, reasoning that the fact that "*Central Hudson* and the case at bar both involve government interference with private speech in a commercial context" was "more significant" than the distinction between regulations that restrict vs. compel speech. *Livestock Mktg. Ass'n v. USDA*, 335 F.3d 711, 722 (8th Cir. 2003), *vacated on other grounds*, *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550 (2005).

Appellate Case: 24-1513    Page: 32    Date Filed: 07/18/2024 Entry ID: 5415018

*Id.*

The Board's interest in vindicating Bo's rights under the NLRA is clearly substantial. Moreover, any limitations on Home Depot's commercial speech were "designed carefully to achieve the State's goal." *Id.* First, any "restriction . . . directly advance[s] the state interest." *Id.* The Board has an "interest," indeed a duty, to protect employees' statutory rights. The remedial order "directly advance[s]" that interest by requiring that Home Depot cease and desist from violating those rights. Home Depot cannot possibly suggest that the remedial order "provides only ineffective or remote support for the government's purpose," when it narrowly, effectively, and immediately vindicates the purpose of protecting Bo's statutory rights.

In addition, the "governmental interest could [not] be served as well by a more limited restriction on commercial speech." *Id.* This Court has held that the government "need not pursue the least restrictive means." *Passions Video, Inc. v. Nixon*, 458 F.3d 837, 843 (8th Cir. 2006). Instead, "what is required 'is a "fit" between the legislature's ends and the means chosen to accomplish those ends,' a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best

26

disposition but one whose scope is in proportion to the interest served." *Bd. of Trustees v. Fox*, 492 U.S. 469, 480 (1989) (cleaned up). The Board concluded that Bo had a statutory right to place the markings on the apron. That right cannot be protected by any measure short of ordering Home Depot not to interfere with the exercise of that right. That is all the Board did here.

Even if the Board's order minimally interferes with Home Depot's commercial speech, it satisfies the *Central Hudson* test.

## VI. Accepting Home Depot's First Amendment Argument Would Undermine Decades of Established Law

Accepting Home Depot's First Amendment argument would send shockwaves far beyond the facts of this case, unraveling decades of unquestioned precedent. It is a bedrock principle of federal labor law that, absent "special circumstances," an employer cannot prohibit employees from wearing a union button or other insignia to further their collective interests as employees. Though Home Depot suggests that a First Amendment holding might not affect "pro-union pins" and other messages with a "closer nexus to workplace issues," HD Br. 55, *nothing* about its arguments is so limited. An employer seeking to suppress its workers' organizing could easily contend that requiring it

27

to accommodate union insignia unconstitutionally "distorts [its] speech by changing the message its employees . . . communicate to the public." HD Br. 46.

Shortly after the passage of the NLRA, the Supreme Court held that the Act provides employees the right to wear union buttons at work. *See Republic Aviation*, 324 U.S. at 803. Echoing Home Depot's claims here, the employer objected that the employee buttons would be misunderstood as communicating the employer's own views. *See id.* at 801 (employer "felt that it would violate its neutrality in labor organization if it permitted the display of a steward button by an employee . . . [because] such display represented to other employees that the union already was recognized"). The Court rejected this argument and enforced the Board's order permitting the buttons. *Id.* at 805.

Since *Republic Aviation*, this Court has repeatedly explained that "employees do have the right to wear union insignia during working time as a legitimate union activity and that interference with this right by the employer is generally unwarranted." *Fabri-Tek,* 352 F.2d at 584. *See also Wal-Mart Stores, Inc. v. NLRB*, 400 F.3d 1093, 1097 (8th Cir.

28

2005) ("Ordinarily, employees may wear union insignia while on their employer's premises."); *NLRB v. Intertherm, Inc.*, 596 F.2d 267, 272 (8th Cir. 1979) ("It has long been recognized that an employer may not restrict that right absent exigent circumstances . . . .")[4] Indeed, in a case closely paralleling this one, this Court recognized the principle that an employer commits an unfair labor practice "if it disparately enforces [a uniform] restriction by banning union insignia while allowing other insignia of a similar nature." *Cintas Corp. v. NLRB*, 589 F.3d 905, 915 (8th Cir. 2009). Echoing Home Depot's contentions here, the employer— a provider of corporate uniforms that maintained a strict dress code— had argued that it was entitled to prevent employees from wearing pins and stickers with messaging that was critical of the employer because it was "vital that the company's own employees reflect its desired

---

[4] This Court's holdings were themselves well-grounded in decades of well-established Board precedent applying *Republic Aviation* to customer-facing employees, *see Boch Imports, Inc.*, 362 NLRB 706, 716 (2015) ("[C]ustomer exposure to such insignia, alone, is not a special circumstance allowing the employer to prohibit such a display"), employees wearing uniforms, *see Am. Med. Response W.*, 370 NLRB No. 58 at 10 (2020) ("[T]he requirement that employees wear a uniform is not alone a special circumstance justifying button prohibition"), and customer-facing employees wearing uniforms, *see In-N-Out Burger, Inc.*, 365 NLRB No. 39 (2017), *enforced,* 894 F.3d 707 (5th Cir. 2018).

Appellate Case: 24-1513     Page: 36     Date Filed: 07/18/2024 Entry ID: 5415018

corporate identity." *Id.* Because the employer had permitted some personalization of the uniforms—allowing "holiday and decorative pins" and "colorful scarves,"—the Court enforced the Board's order mandating that the company desist from disciplining employees for wearing the protected insignia.

While Home Depot cloaks its objections in constitutional garb, the substance of its argument is indistinguishable from that which the *Cintas* court rejected. Thus, even if it would not also run afoul of *Republic Aviation*, a constitutional holding in Home Depot's favor would require the Court to overrule *sub silentio* its own line of precedent—and certainly *Cintas*. This the Court cannot do without seeking that this case be heard *en banc*, for "[i]t is a cardinal rule in [this] circuit that one panel is bound by the decision of a prior panel." *Owsley v. Luebbers,* 281 F.3d 687, 690 (8th Cir. 2002). Nor should it do so here, because the "special circumstances" doctrine, in fact, accounts for any legitimate First Amendment interests that an employer may have.

An employee's right to wear Section 7-protected insignia is not unqualified. Under the "special circumstances" doctrine, an employer may "lawfully ban union messages on publicly visible apparel on the job

30

when the company reasonably believes the message may harm its relationship with its customers or its public image." *S. New England Tel. Co. v. NLRB*, 793 F.3d 93, 95 (D.C. Cir. 2015) (Kavanaugh, J.). Both the Board and courts have barred a variety of messages that would otherwise constitute protected concerted activity on the grounds that they harmed a company's public image. *See, e.g., id.* at 94 (employee t-shirts that read "inmate/prisoner of AT&T"); *Pathmark Stores, Inc.*, 342 NLRB 378, 379 (2004) (employee shirts reading: "Don't Cheat about the Meat"); *Bell-Atl.-Pa., Inc.*, 339 NLRB 1084, 1087 (2003) (employee shirts protesting layoffs reading: "Road Kill" and depicting employees as squashed rodents), The same is true in circumstances where, although the message may not have been controversial, it would have interfered with an employer's carefully curated public image. *See, e.g., W San Diego*, 348 NLRB 372, 372 (2006) (union button would have interfered with hotel's unique ambience and "special uniforms [that] achieve[d] a trendy, distinct, and chic look").

Indeed, the application of the special circumstances doctrine roughly parallels the constitutional analysis in *FAIR*. First, an employer must demonstrate that it has established a "public image . . .

Appellate Case: 24-1513     Page: 38     Date Filed: 07/18/2024 Entry ID: 5415018

as part of its business plan, through appearance rules for its employees." *Bell-Atl.*, 339 NLRB at 1086. Second, the employer must demonstrate that permitting its employees to wear NLRA-protected insignia would impair its ability to preserve that image. Because any message that is conveyed by a uniform requirement is commercial speech directed at customers, demonstrating that the addition of a message is likely to strain customer relations is equivalent to *FAIR*'s requirement that the "complaining speaker" demonstrate that its "own message was affected by the speech it was forced to accommodate." 547 U.S. at 49. *Cf. NLRB v. Starbucks Corp.*, 679 F.3d 70, 78 (2d Cir. 2012) (finding special circumstances based on evidence that too many union buttons would create a "serious dilution of the information" the company sought to convey and a "distraction from its messages").

Thus understood, it becomes clear why, in the 80 years since *Republic Aviation*, no court has ever found cause to question the employee insignia jurisprudence under the First Amendment. Even assuming that the First Amendment is implicated at all by a uniform requirement, the Board's statutory interpretation avoids the constitutional issue by being at least as protective of employer interests

32

as the First Amendment. An employer that has failed to demonstrate that its public image concerns create special circumstances either has not engaged in protected speech or has not shown that the accommodation of employee insignia would interfere with any such speech—the two crucial prerequisites that *FAIR* requires to interpose a constitutional defense to a Board order.

The Board's special circumstances doctrine thus fully accommodates the concerns expressed by Home Depot. Home Depot simply failed to present sufficient evidence to justify its application in this case. In that regard, the case is analogous to *United Parcel Service*, 312 NLRB 596 (1993), where the Board "fully appreciate[d] the Respondent's history of presenting to the general public its image of a neatly uniformed driver and acknowledge that this image is an important business objective of [UPS]," but, based on the evidence, could not "find that the pin when worn by the . . . uniformed drivers interferes in any meaningful way with their desired image." *Id*. at 597.

There is no reason for this Court to accept Home Depot's First Amendment argument and thereby unsettle decades of precedent

33

because the Board's special circumstances exception already fully protects Home Depot's and other retailers' legitimate interests.

## CONCLUSION

The Court should deny Home Depot's Petition for Review and enforce the Board's order.

<u>*/s/ Matthew Ginsburg*</u>
Matthew Ginsburg
Harold C. Becker
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5397

*Counsel for Amicus Curiae AFL-CIO*

Appellate Case: 24-1513    Page: 41    Date Filed: 07/18/2024 Entry ID: 5415018

## CERTIFICATE OF COMPLIANCE

Under Federal Rule of Appellate Procedure 32(a)(7), I certify that this brief complies with Rule 32(a)(7)'s type-volume limitation, because it contains 6,498 words, as determined by the Microsoft Word word-processing system used to prepare the brief, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with Rule 32(a)(5)'s typeface requirements and Rule 32(a)(6)'s type-style requirements because it has been prepared in a proportionately spaced typeface using the 2016 version of Microsoft Word in 14-point Century Schoolbook font.

I further certify that this PDF has been scanned for viruses and no viruses were found on the file.

/s/ Matthew Ginsburg

Matthew Ginsburg

Appellate Case: 24-1513    Page: 42    Date Filed: 07/18/2024 Entry ID: 5415018

**CERTIFICATE OF SERVICE**

I certify that I caused this document to be electronically filed with the Clerk of the Court using the appellate CM/ECF system on July 18, 2024. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Matthew Ginsburg

Matthew Ginsburg

Date: July 18, 2024

Appellate Case: 24-1513    Page: 43    Date Filed: 07/18/2024 Entry ID: 5415018